UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| BRIAN T. BROOKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:23-CV-7-JEM |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 12]. Now before the Court is Plaintiff's Motion for Judgment Based on the Administrative Record [Doc. 15]. Brian T. Brooks ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of Defendant Kilolo Kijakazi ("the Commissioner"). For the reasons that follow, the Court denies Plaintiff's Motion for Judgment Based on the Administrative Record [Doc. 15] and sustains the decision of the Commissioner.

I.  **PROCEDURAL HISTORY**

On April 14, 2020, Plaintiff filed for Disability Insurance Benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* [Tr. 183]. Plaintiff originally claimed a period of disability that began on September 25, 2019 [*id.*] but he amended his alleged onset date to January 4, 2020 at the hearing [*id.* at 15]. After his claim was denied initially [*id.* at 95–98] and upon reconsideration [*id.* at 85], Plaintiff requested a hearing before an ALJ [*id.* at 104–05]. A hearing was held on November 17, 2021 before ALJ Benjamin Burton (hereinafter "ALJ Burton" or "the ALJ") [*Id.* at 29–54]. On November 29, 2021, ALJ Burton found Plaintiff not disabled [*Id.* at 12–

28]. Plaintiff asked the Appeals Counsel to review the ALJ's decision [*Id.* at 176–79]. The Appeals Council denied Plaintiff's request for review [*id.* at 1–8], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on January 31, 2023, seeking judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g) [Doc. 1]. The parties have filed opposing briefs, and this matter is now ripe for adjudication [Docs. 15, 16, and 20].

## II. DISABILITY ELIGIBILITY AND ALJ FINDINGS

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a

listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e), 416.920(a)(4), 416.920(e). RFC is the most a claimant can do despite his limitations. *Id.* §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

Here, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.

2. The claimant has not engaged in substantial gainful activity since January 4, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: disorders of the skeletal spine, major joint dysfunction, osteoarthritis, other fracture of bones, reconstructive surgery of weight bearing joint, and obesity. (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR

3

404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally lift and/or carry up to 30 pounds; frequently lift and/or carry up to 25 pounds; stand and/or walk up to 7 hours in an 8-hour workday and sit for 8 hours total in an 8-hour workday.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on January 4, 1970 and was 49 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 4, 2020, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 17–23].

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.

4

2004). In reviewing the Commissioner's decision, the Court must consider the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not try the case *de novo*, weigh the evidence, or make credibility determinations nor resolve conflicts in the evidence, nor decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In addition to considering whether the ALJ's decision is supported by substantial evidence, the Court must review whether the ALJ employed the correct legal criteria. It is grounds for reversal of a decision—even if supported by substantial evidence—where "the SSA fails to follow

5

its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV. ANALYSIS

Plaintiff raises three issues on appeal. First, Plaintiff argues that the RFC is internally inconsistent because the ALJ limited Plaintiff to light work but found he could perform various functions at the medium level and is otherwise not supported by substantial evidence [Doc. 16 p. 11]. The Commissioner responds that the RFC was not inconsistent, and that the ALJ found Plaintiff capable of light work with the exceptions of certain capabilities he could perform at a medium-level [Doc. 20 pp. 7–9]. Second, Plaintiff argues that the RFC should have contained the sit/stand option that the ALJ included in one of the hypotheticals he posed to the vocational expert ("VE") at the hearing [Doc. 16 p. 13]. The Commissioner responds that "just because the ALJ finds an opinion persuasive does not mean that he needs to adopt the source's findings word-for-word in the RFC" [Doc. 20 pp. 8–9 (citation omitted)]. Third, Plaintiff argues that the ALJ erred by failing to properly evaluate the opinion of Dr. William Kennedy ("Dr. Kennedy") because he found it ungermane [Doc. 16 p. 15]. The Commissioner responds that the ALJ properly evaluated Dr. Kennedy's opinion and supported his decision with substantial evidence [Doc. 20 pp. 4–7]. For the reasons stated more fully below, the Court sustains the decision of the Commissioner.

6

### A. Consideration of Plaintiff's Limitations

Plaintiff argues that the ALJ's RFC is internally inconsistent with respect to his physical limitations because ALJ Burton limited him to light work but at a medium level and is otherwise not supported by substantial evidence because Dr. David McConnell ("Dr. McConnell") did not conduct a thorough exam [Doc. 16 p. 13]. The Commissioner responds that the ALJ properly found that Plaintiff is capable of more than light work but less than medium work and that the Plaintiff made no objections to the record at the hearing [Doc. 20 pp. 6–8].

The RFC is the most a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Light work "requires a person to be on their feet for 2.67-5.33 hours in a day, while lifting and carrying up to 10 pounds in that time." *Elias v. Comm'r of Soc. Sec.*, No. 17-14033, 2019 WL 1415489, at *7 (E.D. Mich. Jan. 26, 2019) (citing SSR 83-10, 1983 WL 31251, at *5), *report and recommendation adopted*, No. CV 17-14033, 2019 WL 1399944 (E.D. Mich. Mar. 28, 2019); *see also* 20 C.F.R. § 220.132 (defining light work as work requiring "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds"). "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 220.132. "But not all individuals fall into single categories. Sometimes a claimant falls between two 'ranges of work,' such as when someone 'can perform more than light but less than medium work.'" *Blackburn v. Comm'r of Soc. Sec.*, 748 F. App'x 45, 48 (6th Cir. 2018) (quoting 20 C.F.R. § Pt. 404, Subpt. P, App. 2 § 200.00(d)). "In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work, . . . [vocational specialist] assistance is advisable[.]" SSR 83-12, 1983 WL 31253, at *3; *see also Blackburn*, 748 F. App'x at 48 (finding when claimants fall in between two ranges of

7

work "an administrative law judge consults vocational experts with 'specialized knowledge' to make an informed decision about what jobs a claimant can do" (citation omitted)).

In Plaintiff's case, ALJ Burton correctly followed this process. The ALJ first determined Plaintiff's RFC, finding Plaintiff capable of light work "except he can occasionally lift and/or carry up to 30 pounds; frequently lift and/or carry up to 25 pounds; stand and/or walk up to 7 hours in an 8-hour workday and sit for 8 hours total in an 8-hour workday" [Tr. 18]. ALJ Burton found that Plaintiff was unable to perform any past relevant work [*Id.* at 21]. Based on these findings, Plaintiff's physical capabilities fell between light and medium work as defined by the Social Security Regulations. *See* 20 C.F.R. § 220.132. Plaintiff could do more than the definition of light work but less than medium work, specifically Plaintiff could lift up to thirty pounds, whereas light work requires no more than twenty pounds. SSR 83-10, 1983 WL 31251, at *5.

As such, ALJ Burton asked the VE at the November 17, 2021 hearing the following question:

> [T]his individual can occasionally lift and carry 30 pounds, can frequently lift and carry 25 pounds, can stand and/or walk for approximately seven hours out of an eight-hour workday, and sit eight hours out of an eight-hour workday. . . . would those marker and hand packer and garment sorter jobs be available under that hypothetical?

[Tr. 52]. The VE responded that those jobs would be available [*Id.*].

As required by Social Security Rule 83-12, the ALJ relied on VE testimony to determine the Plaintiff's capabilities. ALJ Burton further discussed this process in his decision citing specifically to 20 C.F.R. § Pt. 404, Subpt. P, App. 2 and stating: "To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity" [Tr. 22]. He

concluded that "[b]ased on the testimony of the vocational expert, . . . [and] considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of 'not disabled' is therefore appropriate under the framework of the above-cited rule" [*Id.* at 23]. Thus, the Court finds that the ALJ's RFC determination was not inconsistent but rather complied with the requirements of the regulations.

In addition, the ALJ's RFC was otherwise supported by substantial evidence, particularly Dr. McConnell's opinion [*Id.* at 1459–69]. Plaintiff was referred to Dr. McConnell for a consultative exam. Dr. McConnell concluded that Plaintiff could:

> [O]ccasionally lift and carry including upward pulling for up to one-third of an eight-hour workday a maximum of 30 lbs, frequently lift and carry from one-third to two-thirds of an eight-hour workday a maximum of 25 lbs, stand and walk with normal breaks for about seven hours in an eight-hour workday, and sit with normal breaks at least eight hours in an eight-hours workday.

[*Id.* at 648]. The ALJ adopted all of Dr. McConnell's findings when formulating his RFC. Therefore, the ALJ's RFC was supported by substantial evidence on the record.

Plaintiff argues that the ALJ should not have found Dr. McConnell's opinion persuasive because Plaintiff states that Dr. McConnell did not perform a thorough exam nor ask him to lift a certain amount of weight [Doc. 16 p. 14]. As the Commissioner correctly points out, Plaintiff's counsel did not dispute Dr. McConnell's examination or opinion at the hearing or at any point before this appeal. The ALJ specifically asked Plaintiff's counsel if she "had the opportunity to review the exhibits" to which she responded, "Yes, Your Honor. No objection to the exhibits" [Tr. 33].

B.  **Sit/Stand Option**

Plaintiff argues that the ALJ erred in not including a sit/stand option in the RFC because he asked the VE a hypothetical that included that limitation [Doc. 16 pp. 13–14]. The ALJ questioned the VE on a number of hypotheticals with varying limitations including the following scenario:

> [A]n individual of the claimant's age and education. . . . assume the individual is limited to occasionally lifting and carrying 50 pounds, frequently lifting and carrying 25 pounds, could stand and/or walk six out of eight hours, and, and can sit six out of eight hours, but be limited to frequent posturals, except for occasional climbing of ladders, ropes, and scaffolds.
>
> . . .
>
> If you were to add to that hypothetical what we typically refer to as a sit/stand option, after 30 minutes of sitting, they would need five minutes of repositions in a standing position. However, this could be performed while at the workstation. Would that have any effect on the jobs that you identified, including past work?

[Tr. 50–51]. The VE responded that there would be work available in the medium and light categories but the jobs available in the light exertional category would be reduced by half "in order to facilitate that sit and stand opportunity" [*Id.* at 51–52]. Although the ALJ asked this hypothetical, as well as others, during the hearing, there is no reason or authority supporting Plaintiff's assertion that the ALJ was bound to accept this particular RFC formulation. The ALJ, not the VE, is tasked with determining the Plaintiff's RFC. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). Moreover, as described above, the RFC was supported by substantial evidence.

C.  **Consideration of the Opinion of Dr. Kennedy**

Plaintiff argues that the ALJ erroneously discounted Dr. Kennedy's opinion that Plaintiff was limited to sedentary work as "ungermane" because it was provided two months after Plaintiff's

10

operation when Dr. Kennedy's opinion shows that Plaintiff had stabilized with no further substantial improvements for a year, had continued limiting pain, and evidence suggests that Plaintiff had not recovered within the median time frame [Doc. 16 p. 15]. The Commissioner responds that the ALJ properly considered Dr. Kennedy's opinion and his opinion was otherwise supported by the evidence, specifically Dr. McConnell's opinion [Doc. 20 pp. 5–9]. The Court finds that the ALJ properly considered Dr. Kennedy's opinion for consistency and supportability and was otherwise supported by substantial evidence.

Dr. Kennedy reviewed Plaintiff's records and completed an independent examination of Plaintiff on August 21, 2020 [Tr. 516–23]. Dr. Kennedy's report describes Plaintiff's injuries as follows:

> On September 25, 2019 Mr. Brooks was involved in a motor vehicle accident when his pickup truck was struck in the rear by a tow truck. The impact knocked his truck up a steep embankment on the right side of the road. His truck fell from the embankment and rolled over to the left landing on its top on the roadway. He had immediate onset of pain that was most severe in the lumbosacral region of his back (as he pointed for me) but that also extended into the mid and upper lumbar region as he further pointed.
>
> Shortly after the accident he was transferred by ambulance to the Emergency Department of Greeneville Community Hospital East where testing included a CT scan of the lumbar spine that showed a mild acute compression fracture of the L1 vertebra and bilateral spondylolysis with first degree spondylolisthesis with associated advanced degenerative disc disease at L5.
>
> Subsequently, Mr. Brooks came under the care of Dr. Benjamin Knox whose treatment ultimately included surgical decompression and posterior lumbar interbody fusion at L5-S1 as indicated in the medical records reviewed below. Mr. Brooks did not recall having any low back pain that required any treatment prior to the motor vehicle accident of 9/25/19. Furthermore, he was not aware of having spondylolisthesis, degenerative disc disease, or any other abnormality in his lumbar spine until after that accident.

[*Id.* at 516]. In review of Plaintiff's medical history, Dr. Kennedy noted that after being treated conservatively, Plaintiff's records indicate he was referred to physical therapy and to an orthopedic

11

surgeon for further evaluation on October 17, 2019 [*Id.* at 517]. Plaintiff continued to report "significant pain in the lumbosacral region with radiation into the buttocks but not into the lower extremities. . . . The pain was such that Mr. Brooks had not been able to return to any meaningful physical activities without significantly increasing the lumbosacral pain for 2-3 days" [*Id.* at 518]. As non-surgical treatment had not provided sufficient relief, Dr. Knox "recommended surgical decompression and stabilization at the site of the L5-S1 spondylolisthesis" [*Id.*]. Plaintiff underwent surgery on June 18, 2020 to "surgically decompress[] L5-S1 by removing the entire lamina. He included in his procedure a posterior interbody fusion using fusion cages and further stabilized the fusion site using pedicle screws and rods bilaterally" [*Id.*].

Dr. Kennedy saw Plaintiff about two months after his surgery on August 4, 2020 and found that Plaintiff had "some back pain and leg pain bilaterally with activities, but those symptoms were improving" and "obvious pain when [he] stood from a sitting position" which subsided within a minute [*Id.* at 518–19]. He concluded that "Mr. Brooks' posttraumatic lumbar spine condition had stabilized, which meant that I did not expect any significant changes with or without additional treatment in the foreseeable future, which is defined as one year. The finding of stabilized posttraumatic lumbar spine conditions also meant that it was appropriate for me to calculate his permanent physical impairment as given below." [*Id.* at 521]. Dr. Kennedy recommended the following restrictions:

> Future activities of daily living and future employment should not require repeated bending, stooping, or squatting or working over rough terrain of in rough vehicles. He should attempt to climb ladders or work at heights or under conditions such as on his hands and knees or crawling or under conditions in which his safety and stability would depend on the normal pain free mobility and strength of his lumbar spine. He should not attempt to work with his hands elevated above the level of his shoulders. He should not be subjected to vibrations. He should not attempt to run or jump. He should be able to control his posture with regard to sitting or standing and walking. He should be able to sit at least 50% of the time with opportunities

12

> to change positions at least every 30 minutes. Lifting and carrying should not exceed 20 pounds occasionally or 10 pounds frequently.

[*Id.* at 523]. These restrictions are compatible with sedentary work as defined by the Social Security Regulations. 20 C.F.R. § 404.1567.

The ALJ must "evaluate the persuasiveness of [the] medical opinions and prior administrative medical findings" using five factors, including the (1) supportability and (2) consistency of the opinions or findings, the medical source's (3) relationship with the claimant and (4) specialization, as well as (5) "other factors" such as the "medical source's familiarity with the other evidence in a claim" and their "understanding of [the SSA's] disability program's policies and evidentiary requirements." *Id.* § 404.1520c(a), (c). Of these five factors, "[t]he most important . . . are supportability and consistency." *Id.* § 404.1520c(a), (b)(2). The supportability factor states that, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). The consistency factor states that, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2).

Here, the Court finds that ALJ Burton sufficiently explained why he found Dr. Kennedy's opinion only somewhat persuasive and how he considered the factors as outlined in 20 C.F.R. § 404.1520. The ALJ explained that to the extent that Dr. Kennedy's opinion "suggests permanence" it is unpersuasive because "subsequent evidence shows continued improvement" [Tr. 21]. This contradictory evidence was detailed earlier in the ALJ's decision stating:

> Though the claimant sustained significant spine injury in a motor vehicle accident prior to the relevant period, he showed improvement in the months following surgical intervention. The assessment of functioning performed just two months post-surgery does not comport with the claimant's presentations and reports in subsequent months. For example, at 3 months post-op he reported doing great and endorsed feeling "tremendous" after

13

> physical therapy. (Exhibit 9F). At 4 months post-op he was noted to have "further improvement" such that he was released to work as a bus driver. (Exhibit 10F). At 6 months post-op, he was noted to have satisfactory result from surgery and was discontinued from prescribed pain medication. (Exhibit 11F). During a consultative exam just shy of one-year post-op, the claimant showed normal gait and excellent motor strength. (Exhibit 12F). Considering the foregoing, the undersigned finds the residual function capacity herein well supported by and consistent with the evidence of record.

[*Id.* at 20]. The ALJ cites to reports prepared by the consultative examiner, Dr. Knox, as well as Dr. McConnell to support this portion of his decision. The ALJ found Dr. Kennedy's opinion persuasive as to Plaintiff's abilities as of August 2020 [*Id.* at 21]. Considering that subsequent medical evidence showed improvement from that visit, however, Dr. Kennedy's opinion as to Plaintiff's abilities in August 2020 were not relevant to the ALJ's decision of Plaintiff's residual functioning. Put another way, Dr. Kennedy's opinion is not germane to the ALJ's decision on Plaintiff's continuing abilities. These reasons sufficiently support the weight that the ALJ gave Dr. Kennedy's opinion.

Plaintiff further argues that the ALJ improperly reached his own medical conclusion in determining that Dr. Kennedy's opinion was ungermane [Doc. 16 p. 15]. In support, Plaintiff states that Dr. Kennedy's evaluation "was within the median time frames for return to work and activities following neurosurgical procedures according to the National Institute of Health" [*Id.* at 16 (citing https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7790307/)]. The ALJ did not make a medical conclusion in finding that Dr. Kennedy's report which was written two-months after Plaintiff's surgery "[did] not comport with the claimant's presentations and reports in subsequent months" [Tr. 20]. The ALJ followed the Social Security regulations in evaluating Dr. Kennedy's opinion for consistency and supportability. He found that Dr. Kennedy's opinion as to Plaintiff's abilities was not consistent with or supported by "subsequent evidence [which] shows continued improvement" [*Id.* at 21]. Further, as described in Part A above, the ALJ's RFC reflects Dr.

14

McConnell's opined limitations [*Compare id.* at 18 *with id.* at 648]. Therefore, ALJ Burton's finding that Plaintiff is capable of light work is supported by substantial evidence.

## V. CONCLUSION

For the reasons set forth above, the Court the Court will **DENY** Plaintiff's Motion for Judgment Based on the Administrative Record [Doc. 15] and will **SUSTAIN** the decision of the Commissioner.

ORDER ACCORDINGLY.

ENTER:

Jill E. McCook
United States Magistrate Judge